Counsel, you may proceed. May it please the Court. My name is Michael Zoldan, and I represent Plaintiff Appellant Sonny Anthony on this matter. I'm going to cede five minutes of my time to the EEOC, and I'm going to reserve two minutes for rebuttal. The main focus on this appeal is whether the District Court erred by permitting after acquired evidence to serve as the sole basis for dismissal of Ms. Anthony's disability discrimination claim under the ADA. The trial court held that after acquired evidence of Ms. Anthony not having a bachelor's degree may be used by Trax to undercut her prima facie case with respect to whether she was qualified under the ADA. This was error because under McKinnon v. Nashville, we know that after acquired evidence may not be used as a complete bar to liability. And the distinction made by the District Court in this case, that after acquired evidence is permissible to undercut the plaintiff's prima facie case but not to justify Trax's reason for terminating her, still violates the after acquired evidence rule in McKinnon when the result was exactly what happened in this case. The grant of summary judgment based solely upon the unknown evidence itself. Here's my problem with the case. This is a tricky case because the requirement for a bachelor's degree, which is a fairly standard requirement, and you do the sort of the job description, is typically a placeholder or a surrogate for general education, general sophistication, ability to sort of sustain several years of educational effort. It's a placeholder for various forms of competence. Here it's a requirement because the employer doesn't get paid unless she has a bachelor's degree. So it's not one of these placeholders for something else, and she is not qualified in a different sense from the ordinary, not qualified because she didn't have a bachelor's degree. So her lack of qualification is a different kind, and I'm very sympathetic to the argument you can't sort of search around in the record, you're halfway through litigation, you finally sign something, you say, aha, you didn't have that when in fact she was perfectly capable of doing the job and she did a fine job. How do you fit this case into the sort of the much more run-of-the-mill case of sort of rummaging around in the record and finally finding something that she didn't qualify for in the job description? Well, I think in response to your question about whether she, whether Trax wouldn't be able to get paid because of her work, I think the record reflects that Trax says that pursuant to its contract with the government, there is some requirement that technical writers have a bachelor's degree. Right. But I don't think the record says or any evidence put forth by Trax indicated that they were unable, they were unable to bill for Anthony's work or... I see. But would it be a breach of their, Trax's breach of contract that they've hired her and they're billing for that work? Presumably it would, but I think it's... It may be getting paid is the wrong way to say it, but they're required by contract with the government that she have that degree. That's what Trax asserted. However, Trax did not put forth their contract with the government. So the record... Well, my question would be, did they get paid for her work as a technical writer? As far as I know, that question is unknown. I don't think Trax put forth any evidence regarding whether they got paid for her work despite the fact that she worked in this capacity for two years performing her technical writer jobs. No one during her two years of employment from Trax ever suggested that she was unable to do her job, unable to do the essential functions of her job, unable to bill for her time. And I think it's critical to at least look at the position description here where one of the... There's eight factors in the position description, and that's at ER 211. One of them is to maintain a security clearance that presumably Trax would have had to do something to confirm that she was able to work according to whatever its security clearance background check was. And there's a whole list of other qualifications, but I think as far as the regulation is concerned, the time for Trax to perform this inquiry into whether Ms. Anthony was qualified according to the minimum qualifications was the time that she was hired or perhaps the time that she was fired. But what happens if you have an employee who pretends that she has the qualifications, she does not in fact have the qualifications, which may well be the case here? What happens, well, is that employee fired because of her inability or her lack thereof of having the qualifications? No, but this is a case where I gather it is conceded that she pretended to have the qualification. She also says that she was given permission to have the job despite the fact she didn't. But as I'm reading here the blue brief, I gather it's conceded that she misrepresented her status. It is. And what happens in that case, according to McKinnon, is that the plaintiff doesn't lose her case. She suffers by way of her remedy. And I think that that's consistent with the McKinnon rule, is that— Well, so are you saying that McKinnon overruled or implicitly overruled or abrogated our decision in Mantillet? I am. Okay, so you're just completely disregarding Mantillet? Yes. Okay, because of the language that it doesn't—the after-acquired evidence doesn't operate in every instance, but not precise on what instances it does operate or doesn't operate. Yes, so the McKinnon proposition, the way that it's cited in her brief and the way that I'm arguing that applies is that it cannot—the after-acquired evidence cannot operate as an absolute bar to liability. And in this case, that is exactly what occurred, is that in the absence of the after-acquired evidence that the district court relied upon, there would be no summary judgment in Trax's favor and Anthony's case would still move forward towards trial. Now, isn't the fact that McKinnon dealt with the ADA and not the ADA a factor because the ADA has the additional requirement that the employee be qualified? I don't think it's a factor because in other Title VII cases and in the ADA, typically in a prima facie case, that employee is going to have to demonstrate as part of her claim that she's qualified to perform the job. And I understand the distinction, and it's a good one, that in the ADA, qualified is actually in the statute, whereas in Title VII or in the ADA, the word qualified is not actually written in the statute. Qualified may mean something different from able to do the job. I think it does. I think it does. And the qualification requirement isn't a requirement that simply attaches at the time the employment begins. It's a requirement, an ongoing requirement, if you will, to her keeping her job. It is, except for the fact that there was never a dispute as to whether TREX was aware that Anthony did not have the bachelor's degree until five years after. Well, it's a requirement regardless of TREX awareness, correct? It was listed in their position description as a required qualification. Now, what about, she claims, also has a claim that TREX did not engage in the interactive process during which she had qualifications that could have made her eligible for a reassignment position. Right. Yes. So, she was in communication with the Human Resources Department, and there were multiple times when she requested different accommodations, such as being able to work from home, or essentially any accommodation. And TREX's response, essentially, was that she was unable to return to work unless she could confirm that she was 100% cured. So TREX had a policy that suggested that unless Anthony can confirm that she was 100% cured of her disability, which is PTSD, that there was nothing they could do. And essentially, when Anthony's FMLA leave expired, she was unable to assert to the company that she was not 100% cured of her PTSD. So then when her FMLA expired, she was terminated. All right. Counsel, shall we hear from the Equal Employment Opportunity Commission? Good morning or good afternoon. I'm not sure. My name is Barbara Sloan. I'm... Pardon? I'm not sure either. Okay. We were right at the cut line. Well, good day. Good day. I'm Barbara Sloan from the EEOC. I thought I'd start with just a couple of points that you asked the plaintiff's counsel. The court said, I mean, Judge Fletcher, you talked about this is a very important requirement that the individual have a college degree, but McKinnon doesn't talk about important versus unimportant requirements. What McKinnon looks at is the objectives of the statute and how can we further them. The objectives of the statute being the importance of enforcing the anti-discrimination laws, encouraging victims to come forward and not having to worry that their entire lives are going to be put under a microscope by the defense looking for some piece of wrongdoing whether or not they even did something, which actually the defendant here admits it does, and also that important public interest be furthered. That said, employers also have an important interest, not wanting to employ wrongdoers. So what McKinnon did was it balanced the various interests involved. And that would be the employer's interest. We're going to limit relief. We're not going to, or potentially limit relief. We're not going to, after acquired evidence, completely be a bar to liability, but it will affect relief. And regardless of how important or unimportant, if the employer didn't know that it was looking for important information when it started looking in the record, it was just looking for something, happened to come up with something important. Regarding Mantelletti, I think McKinnon arguably does take over there, but if the court thinks that Mantelletti is continuing, has continuing validity, it's important to note that, number one, the court concluded that the evidence might indicate that if the individual did this job, she might be a direct threat to herself. It wasn't just that she didn't meet, she couldn't do the essential functions, no, she would be a direct threat. It's also reviewed under an abuse of discretion standard because the court actually, the district court, let it go to trial, which is not saying it's an absolute bar to any liability whatsoever. And lastly, the court then said, well, assuming, we'll have to send it back and we'll look to see whether a reasonable accommodation is needed. So the court wasn't even saying, okay, this clearly shows she can't do the job. It was saying, if the evidence shows she can't do the job, well, let's see if she can do it with a reasonable accommodation. So it's very different from virtually all of the after-acquired evidence cases that we see these days. And I'd like to mention that this is the first time we've seen this particular fact pattern where an employer and a district court is saying that after-acquired evidence of qualifications, not essential functions, but qualifications, is a complete bar to liability in an ADA case. That is, since the judicial estoppel cases back in the 90s, which the Supreme Court brushed aside in Cleveland. So I would request that the court look at the claim that's being raised. If it's something where the element that the employer is raising is the cause of the employer's decision, like it was in Johnson or like it would have been in Bates, then of course the qualification requirements are paramount. And to respond to something that the Chamber says, we're not saying that an employer can't have these requirements. We stand by our reg wholeheartedly. Of course an employer can have all of these qualification requirements and they can insist that applicants meet them and they can fire people who don't meet them. But in this narrow circumstance where after-acquired evidence is involved, we think McKinnon should control. So, thank you, Your Honors. All right. Thank you, Counsel. May it please the Court, my name is Scott Hagan and I represent Appalachia Tracts International Corporation. Your Honors, Title I of the ADA, unlike other federal employment discrimination laws, does not prohibit all discrimination in employment against individuals with disabilities, but only qualified individuals with disabilities. Since the plaintiff in this case, Sunny Anthony, is not now and never was qualified for the position that she held at Tracts, she was unable to show that she was a qualified individual with a disability and summary judgment was properly granted for that reason. This is well established in Ninth Circuit law. This Court held in Weir v. 20th Century Fox, the plain language of the Act, speaking of the ADA, thus allows only those who are qualified individuals to bring suit. And the Court further held in Bates v. United Parcel Service that under the ADA, the employee bears the ultimate burden of proving that he is a qualified individual with a disability. And that, Your Honors, is the key distinction in this case. We're talking about a statute that just has a requirement that is on the, the burden is on the employee to prove that he or she is a qualified individual with a disability. And that qualification issue is not found in these, in these other statutes. For example, in the McKinnon case, the age discrimination statute does not require the plaintiff to show that he's qualified. Now, as part of the analysis of the employer's intent, which is what the McDonnell-Douglas burden shifting formula is used for, the plaintiff usually has to make a showing of qualification for the job, because it's logical in evaluating circumstantial evidence to look at, well, the, it, it did, was the employer motivated by a wrongful intent? So you show, I'm a member of the protected class, I was qualified for my job, and I got fired. And that raises an inference, potentially, of discrimination. But that's not the case under the ADA. Under the ADA, there's an actual statutory requirement of proof that the individual is qualified in order to even come within the ambit of the act. Is, this is a tricky question. Within the context, now, of ADA, where we have the statutory requirement that the employee be qualified, the employer, at the time of certain negotiation, accommodation, discussion, the, the back and forth, doesn't know about the lack of qualification. Right. And, as far as the employer is concerned, and what the employer knows at that time, the employer is obligated, under the ADA, to engage in the back and forth, to discover, to decide what the reasonable accommodation is. And you're saying that, even though, as far as the employer knew, it was required to engage in this back and forth process, the employer escapes liability because it can find out after the fact that what it knew, or thought it knew it was supposed to do, it didn't do, but it turns out after the fact, whew, oh, it turns out my violation of what I thought was my responsibility wasn't a violation. That's your position. Yeah. Let me say first, though, Your Honor, that we would contend that we did engage in the back and forth. But to answer your question. That's a separate question. Right. But to answer your question, that, that is the requirement of the act. In order to, to have that obligation, to have the right, I guess, under the, for the employee to have the right to that interactive dialogue, they have to be otherwise qualified. So the statute, it just doesn't protect individuals who are not qualified for the position they hold or seek. But that, then, opens the door to all kinds of problems. Now, maybe that's the way, I have to read the statute, I get that. But I'm trying to figure out if this is a practical matter, that if the rule is that after acquired evidence of lack of qualification can excuse the employer from not engaging in the interactive process, even though at the time of not engaging in the interactive process, the employer thought that it was required to do so, boy, we're going to get a lot of rummaging around in the employee's background. And a lot of job descriptions have all this kind of boilerplate stuff that the employer may not really care about, but is right there in the job description. And so I think we're going to, this is a can of worms. Well, Your Honor, I think the incentive is already there. The court stated in McKinnon, it was basically the last thing in the opinion where the court said, you know, it's possible that because we're allowing employers to have the benefit of using this wrongful conduct at all, because it does go to the issue of damages after McKinnon, that this will incentivize employers to, you know, abuse the discovery process was the argument that was considered. And the court said, well, you know, we recognize that, but we believe that there are other remedies, ways, procedural rules that courts have to deal with that. But in the interactive process, she could be qualified for other jobs, say, that did not require the bachelor degree requirement, and she could be qualified for those, and yet you didn't, you know, Jackson, engage in that to see if they could shift her to another position. Well, the beginning point of the analysis, though, before you have the obligation to engage in the interactive process, is that the employee has to be qualified for the job she holds or seeks. Where do you find that in the statute or case law? Well, I can read it from the statute. Tell me the statute. Statute is 42 U.S.C. 12112B54A. 42. I said that pretty fast. Say it again. 12112B5A. And I'll read it to you, Your Honor. It says, as used in subsection A of this section, the term discriminate against a qualified individual on the basis of disability includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual. So you still have this. Is it clear for which position they're qualified for? I mean, at the time, you're thinking she's qualified for the technical writer position. And she's asking, she's saying, well, there's other things she could be reassigned to that wouldn't necessarily require her to come in. And she's qualified for those positions. Well, the response to that question. I don't think it's answered by the statute. Well, the response to that question. Or at least by what you read, anyway. Right. The response to that question is that you have to be, you have to meet the basic qualifications for the job that you hold or seek. There was no application for a job other than technical writer one. Does it require an application in the interactive process or just a request for the accommodation? Well, to have the duty to enter into the interactive process, the employee has to be otherwise qualified, as the statute says. I mean, theoretically, if you had the obligation to enter into the interactive dialogue with anyone, even if that employee is not qualified for the position they hold, but if there's a job out there somewhere in the company that potentially they could hold, then there would be no end to the obligation. You would always, and the requirement of qualification would have no meaning in that particular statute where it says the employee has to be otherwise qualified. So there's either no end to discovery or no end to obligation of the employer. What's the happy medium here? Well, the statute is clear, and the case law is quite clear that an employee who's disabled is only protected, only comes within the ambit of the act if they're qualified. And that's pretty clear that, you know, there's this, the regulations set out that you have to meet the employer's requirements, you know, the basic licensing and educational requirements. And then, also, you have to show that you're capable, with or without a reasonable accommodation, of performing the essential functions of the position. All right. Anyone have any other questions? Okay. Thank you very much. Thank you, counsel. I'll turn the time over to Mr. Siegel. All right. Thank you. Chamber of Commerce. May it please the Court, James Siegel on behalf of the Chamber of Commerce. Notice and comment rulemaking has consequences. Here, the EEOC followed that procedure and promulgated a regulation that defines the term qualified under the ADA. Businesses are entitled to rely on the plain text of that regulation, which has the force and effect of law. If the EEOC wants to modify that regulation, it can do so using the notice and comment procedure. Regulated parties would be able to weigh in, and that would be subject to judicial review. What the EEOC can't do, and what it's attempting to do here, is essentially tell the Court that when the application of its regulations would produce a policy consequence that it doesn't like in a given case, the Court should simply ignore that regulation. Okay. So help me out. Give me the language of the regulation that we're talking about. So it's 29 CFR 1630.2, and it defines the term qualified as 160.2 is long, so where in that M. Subsection M, Your Honor. Okay. Slow down. Slow down. Sorry. I'm old. No, you're not. I'm elderly. Are you over 60? Yeah, I'm over 60. Okay. And there's P. This is really tricky. Okay. M. Okay. Subsection M. It's the definition of the term qualified. Okay. There I am. Okay. Now, in what part are you thinking binds people here? Okay. So it says, the term qualified with respect to an individual with a disability means that the individual, and this is the first requirement, one, satisfies the requisite skill, experience, education, and other job-related requirements of the employment position such that the individual holds or desires, and two, with or without reasonable accommodation, can perform the essential functions of such a position. So here, the plaintiff's case falters on that first requirement. So let me ask you, so this is where I get the idea that maybe the interactive process and reassignment doesn't require qualification for the job she holds because she may be qualified for the reassignment position she desires. So to be frank, Your Honor, the chamber wasn't necessarily aware that was part of that case. It didn't understand that to be part of the case. I think that argument was raised, if at all, only at the very end of the reply brief. I'm not sure that was pressed at the district court. So you just are not taking a position on that. But having said that, so I'm not, the chamber doesn't take a definitive position. I would not take a definitive position, but I would suggest that might be inconsistent with this Court's decision in Johnson, where Johnson said, essentially, it read this regulation and applied it according to its plain terms, and it said that the reasonable accommodation requirement, which is where the interactive process comes from, that only applies to the second set of requirements imposed in order for a plaintiff to be qualified. So if someone doesn't have the necessary experience, education, or other job-related requirements, there's no need to provide a reasonable accommodation, according to Johnson in this Court's decision. Rather, the need to provide reasonable accommodations applies only to whether that individual can perform the essential functions of that position. So I think that may answer Your Honor's question, but I would just take a step back. And as far as the record says here, and as far as I'm aware, there's one position that this individual desired to hold. That position required a college degree. The plaintiff here did not have that college degree. As a result, she was not qualified. She does not become qualified simply because she successfully concealed her lack of qualifications under the ADA. Unlike other statutes, as Judge Lynn recognized earlier, the ADA only requires that the employer not discriminate with respect to a qualified individual. It's an added step in the liability requirement. So putting the facts of this case to one side, which may be unusual in the sense that the contract with the government requires that the employee have a bachelor's degree. Let's have a much more ordinary case where the boilerplate job description requires that the person have a BA. The person is hired. He or she does a pretty good job for four or five years. There's no dissatisfaction with the work done. And if we're talking real terms, I'm not yet to the law bar. We're just talking real terms. The reason the BA was in there was a nice sorting device. You tend to get a higher quality of applicant and so on. But it turns out the person actually does just as good a job as an awful lot of college graduates. A lot better than, you know, she's really good. And now she develops a disability. And now she wants to have the interactive process. And now you discover she didn't have it, even though she was doing the job very, very well. You nonetheless get to say, I don't have to engage in the interactive process. The regulation is clear, Your Honor. It says that the plaintiff must have the requisite education and other job-related requirements. And so if it's set out in the job posting or what have you that there must be a bachelor's degree, that is a qualification the employer is entitled to impose that qualification. Now, in some circumstances. Even after the fact, and even though during the interactive process period, the employer didn't know that. The employer, as far as I'm hypothesizing. Yes. But I'm hypothesizing the employer has somebody who's been working successfully for five years. The employer thinks that the employee has the BA. The employee develops a disabling disease. And the employer says, okay, you're canned. Even though the law would require the employer to engage in the interactive process, I'm just asking you to assume that those are the facts. And then the employer later on discovers, oh, she didn't have the bachelor's degree, and therefore I'm excused from the responsibility I thought I had, but I blew off. That employer is protected. Yes, Your Honor. That's the structure of the statute. We certainly wouldn't condone the employer's conduct in those circumstances. The ADA recognizes the importance, excuse me, the chamber recognizes the importance of the ADA and the need to eliminate discrimination based on disability. And in circumstances like that, if the employer had sort of a general policy of some sort of refusing to engage in the interactive process, there might be other remedies available. So a qualified individual who's discriminated against in that way could bring suit. Or the EOC could bring a pattern of practice claim and seek injunctive relief. But the ADA and its implementing regulations are clear that if an individual is not qualified, they do not have standing to challenge that particular type of misconduct. All right. Thank you, counsel. You have two minutes. And I'm sorry, but at this late stage of the morning, we're going to hold you to it. Okay. I'll probably be less. But just to speak to the hypothetical you were just raising, in the position of description at issue here, one of the minimum qualifications was being well-versed in Microsoft Office Suite. So essentially under Trax's logic and under the district court's holding. If, for instance, it was revealed at some later point in litigation that Anthony wasn't well-versed in PowerPoint or Excel, and if Trax had no clue about the fact that she didn't know how to do two of those Microsoft Office functions, then according to the holding of the lower court, Anthony would still be considered to be presumptively unqualified for her job. Well, that depends. On that one, I would say that at least as you described the job description, she has to be well-versed in it. And at the time she gets canned, well, maybe when she started the job, she didn't have the qualification. But at the time she gets canned, she's very well-versed in it. I'm not sure it's a good defense at that point. Well, I'm saying even if those tests had nothing to do with her technical writer job. Yeah. So in other words, a boilerplate qualification that really doesn't have much to do with her ability to do the function. Correct. And what it does... Which often is the case for a requirement for a BA degree. Right. And what it does is it opens the door for defenses like this to get rid of cases like McKenna. Yep. I thank you for your time. Oh, yes. Okay. Yes. Thank you very much, all counsel involved. And thank you for waiting to the end of the morning to give such good arguments. This case is submitted. And this session of the court is adjourned for the week. All rise.
judges: Wardlaw, W. Fletcher, Linn